UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARVIN PARKER,

    Plaintiff,

    v.

CHICAGO POLICE OFFICER VINCENT BANNER, CHICAGO POLICE OFFICER DONALD BLAIR, CHICAGO POLICE OFFICER TIMOTHY MADISON, CHICAGO POLICE OFFICER COREY ANDERSON, and CITY OF CHICAGO, a municipal corporation,

    Defendants.

No. 05 C 6378
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

Plaintiff Arvin Parker claims that certain individual police officers denied him his constitutional rights. He has now sued those officers for damages and added a count claiming that the City of Chicago is liable as well because the officers' actions were caused by unconstitutional policies, practices or customs of the City.

Parker now questions whether a city may gain dismissal or postponement of § 1983 liability claims for damages by simply stipulating that it will pay whatever monetary judgment is entered against its employee who is a co-defendant in the lawsuit. The City has already made such a stipulation in this case.

The commonplace nature of the case – an allegation of police officer's misconduct – is significant. The Supreme Court opinion that permitted such policy and practice lawsuits did not consider a case like this one. In *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658 (1978),

the issue was a gender-based discriminatory policy of a municipal government. A legal change in that official policy made injunctive relief moot. There were no individual employees who decided to act unconstitutionally; there was only the city policy to blame. So the only issue was whether money damages could be awarded against the city.

In *Monell*, the Court held that a municipality could not be held to pay damages simply because its employee, acting within the scope of his or her employment, wrongly injured the plaintiff. Instead of allowing *respondeat superior* to be the rule, the plaintiff instead would have to prove that an unconstitutional policy, practice or custom existed. By overruling *Monroe v. Pape*, 436 U.S. 658 (1961), the Court decided that municipalities were not immune from monetary damages under § 1983. However, the ruling created a fairly unique standard of employer liability for damages. This could have been in recognition of the effect its new rule would have on municipal finances, of the decidedly more formal way in which governments set policy or possibly of the winding way in which custom and practice arise.

The other seminal case of *Owen v. City of Independence*, 445 U.S. 622 (1980), also did not resemble an ordinary police liability claim. In *Owen*, the city manager fired a police chief for management failures with respect to the police property room without giving the chief notice or a hearing. The individual city employees were protected by qualified immunity rules,[1] so the plaintiff's only available remedy was the suit against the city. The Court allowed the suit to go forward.

> § 1983 was intended not only to provide compensation to the
> victims of past abuses, but to serve as a deterrent against future
> constitutional deprivations, as well. The knowledge that a

---

[1] The individual officers in this case have not yet asserted immunity.

municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights.

445 U.S. at 651-52 (citations omitted).[2] The Court clarified its reasoning by stating that, "[a] damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees . . . ." *Id*. at 651. I read *Owens* to say that deterrence of future violations will occur because the city will have to pay damages and, if damages grow too large, then the city will change its policies, customs and practices.

In this case, the City has already stipulated that it would pay whatever compensatory damages are awarded for the actions of its employees.[3] If a constitutional violation occurred,

---

[2]I think the quoted passage in *Owen* is actually an endorsement of the idea that the executive and legislative branches of city government ought to be reasonably sure about the constitutionality of their actions before performing them. I have not found much support in subsequent cases for the idea that municipal officials are liable for any act or policy where the lawfulness was subject to "any doubt." This would be entirely inconsistent with the idea of qualified immunity, which states that governmental actors are shielded from liability so long as "their conduct does not violate c*learly established* statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added). The municipality cannot be liable unless an officer is individually liable on the underlying claim. *Treece v. Hochstetler,* 213 F.3d 360, 361 n.2 (7th Cir. 2000). So if qualified immunity exists for an officer, then the municipality should not be liable either.
   Police conduct is often challenged on constitutional grounds. Lower courts reach conflicting results, professors offer differing opinions and usually the final answer is not known for years, until the Supreme Court rules. In any one of the many areas in which reasonable arguments can be made for, and against, a particular police practice, only a fool of a police chief could testify that he had no doubts about the legality of a practice.

[3]Plaintiff argues that the stipulation is illusory because Illinois law already requires indemnification (not to mention the current collective bargaining agreement between the City and its officers). The stipulation is not illusory for two reasons. First, the stipulation is binding for the life of this case, even if state law or union agreements change. Second, without the stipulation Plaintiff may have to bear the cost of enforcing the existing indemnification rights if, for example, he prevails against an individual officer but loses its case against the City. If that were

then the City pays. In my view, that is all *Owen* requires. The idea that the Supreme Court requires some extra incentive to deter cities from allowing their employees to violate rights is inconsistent with its policy of immunizing cities from punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-71 (1981).

In other cases, I have postponed consideration (including discovery) of *Monell* claims against the City. In this case, Plaintiff offers an extensively briefed motion contending that my decisions are in error, so I will re-examine the issue.

There is nothing in the precedents of our Court of Appeals that dictates the rule. In *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), Judge Posner, writing for the Court, noted the importance of the claim against the City.

> The issue has little, probably no, practical significance. No damages were awarded against the City that were not also awarded on a joint and several basis against the individual defendants; and since the City indemnifies its employees for damage awards . . . Jones will collect his judgment in full whether or not the City is held liable.

*Id*. at 995.

Plaintiff argues that this means that, even if nothing is at stake, the claim against the City must go forward alongside the individual claims. This is patently untrue. The City did not challenge (nor did Judge Posner address) the validity of proceeding on a claim of no practical significance. Practical significance is not an irrelevant consideration. *See, e.g.*, *Alliance to End Repression v. City of Chicago*, 820 F.2d 873 (7th Cir. 1987). If nothing is at stake then there

---

to occur, the City might then claim on a variety of grounds that it does not have to indemnify the officers. The stipulation guarantees that if the officers are finally assessed damages, Plaintiff will be paid notwithstanding any change in law or policy, and without further legal costs.

may be no case or controversy. If that is true then there may not be any reason, or even jurisdiction, to proceed.

Other circuits have walked through this field. Plaintiff relies on *Amato v. City of Saratoga Springs*, 170 F.3d 311 (2nd Cir. 1999). In *Amato* the plaintiff claimed excessive force and the District Judge postponed trial of the count against the City until the claim against the individual officers was tried. On its face, Plaintiff's use of this case is perplexing. Both the majority and the concurrence in *Amato* approved the severance and postponement of the *Monell* claim and noted that such action was taken "with some frequency . . . [because] severance is often appropriate in terms of judicial efficiency . . . ." *Id*. at 320. Moreover, *Amato* offers no holding concerning the issue here. Amato won a pyrrhic victory against the individual officers when the jury awarded him $1.00 in damages. The District Judge then dismissed the case without stating a ground. The panel assumed his ground was "the futility of proceeding when only nominal damages were at stake," and the Court of Appeals held that, if this was the ground for dismissal, then the District Judge had erred in doing so. *Id*. at 317. There is no indication that the defendant in *Amato* had agreed to pay the judgment against the officers.

Plaintiff finds one particular passage in *Amato* attractive:

> A judgment against a municipality not only holds that entity responsible for its actions . . . but can also encourage [it] to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue. In short, a finding against officers in their individual capacities does not serve all the purposes of, and is not the equivalent of, a judgment against the municipality.

*Id*. at 317-18.

This is reasoning at a fairly high level of abstraction. I doubt that the Second Circuit panel would have contended that an award of $1.00 would alert any city or its citizenry to the issue of police misconduct. Instead, I think the basis for the *Amato* ruling was founded on the principle that the law allows nominal damages to vindicate deprivations of absolute rights. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978).[4] In reaching its conclusion, and offering broad language in support of it, I think the Second Circuit read dicta in *Carey* as holding – an error against which a distinguished member of that court has written a persuasive argument. *See* Pierre N. Leval, *Judging Under the Constitution: Dicta about Dicta*, 81 N.Y.U. L. Rev. 1249 (2006).

*Carey* dealt with students that had been expelled from school without appropriate due process. The school argued that the suspensions were inevitable, even if there had been a full hearing. The Court recognized that the case before it might well be devoid of any actual damages and, after a discussion of various theories to justify nominal damages even in the absence of conventional damages, it arrived at certain guiding principles. *Carey*, 435 U.S. at 256-59. *Carey* can be read in two ways: to hold that nominal damages are either available in all cases, or available in those cases where traditional compensable injury did not occur. The Court told us which of the two readings is better. It used the explicit language of holding when it closed its opinion.

---

[4]Judge Jacobs concurred because there was no stated ground in the record for dismissing the *Monell* claim. Otherwise he declined to join in the opinion because the trial would be, "a wasteful imposition on the trial judge and on the taxpayers and veniremen of Saratoga Springs . . . . Whatever benefit the majority envisions, . . . [i]t is . . . just as likely that a second trial would benefit the plaintiff only as an act of spite designed to inflict expense on the municipality and compel deference and attention to himself." *Amato*, 170 F.3d at 322-23.

> We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners.

*Id*. at 266-67.

That statement is as far as *Carey* goes – where no other damages are available, nominal damages can be sought. This is why I do not necessarily quarrel with the result in *Amato*. The Second Circuit may well have regarded the nominal damage award against the individual defendants as the equivalent of a determination that no compensatory damages could be awarded. Thus, under *Carey,* nominal damages were available against the City of Saratoga Springs.

The Ninth Circuit produced two other opinions that Plaintiff relies upon: *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), and *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514 (9th Cir. 1999). In *Larez*, the *Monell* claim had been severed until the individual officers had been tried. The Court of Appeals spent little time in dealing with the propriety of a second trial. It is impossible to tell what was argued in support of the appeal of the *Monell* trial. The panel devoted its efforts to dealing with the mixed *Monell* and individual claims against the police chief himself. The panel reversed the verdict in the second trial due to evidentiary error. The opinion is not useful as reasoned precedent on the issue here.

Similar to *Larez* and *Amato*, *Ruvalcaba* involved a case in which the *Monell* claims were severed and the individual defendants were tried first. It is not clear whether this severance was simply a division of proceedings which was conducted in two phases before the same jury. Ruvalcaba lost part of his claim against the individual officer and was fully compensated for the part that he won, but trial errors left him in a position to pursue the *Monell* claims against the city

and its police chief. The *Monell* claim against the police chief was a real dispute because punitive damages were possible. As to the City, the Court simply followed *Larez* without any further reasoning, and said the trial against the City could proceed for nominal damages. Both of these Ninth Circuit opinions do not even attempt to persuade.[5]

Both the Second and Ninth Circuits assume that, when one receives a nominal award from an individual defendant, there is a right to have an *additional* award of nominal damages against the municipality. There may be a policy against double recovery of anything, including nominal damages, but I am not addressing that question here.[6]

---

[5] A California state court also rejected the Second and Ninth Circuits' rule, instead using the reasoning of the Seventh Circuit in *Jones v. City of Chicago.* The Court wrote:
> First, . . . [w]hy litigate the issue of municipal liability in the abstract when the municipality already has already accepted in reality?
> Second, a separate *Monell* trial for nominal damages would be expensive in time and resources to prove (or refute) a widespread pattern or practice of misbehavior. . . . [T]he possibility exists that departments with serious structural problems could use a nominal *Monell* defense verdict as a clean bill of health, thereby delaying needed reforms. . . .
> Third, the expense of *Monell* pattern or practice litigation would unduly inflate the settlement value of suits like this one [a simple excessive force claim in which a seven week trial produced a damage award of $3,380 compensatory and $1000 punitive damages]. . . .
> Fourth, *Monell* . . . claims raise problems of federalism . . . [T]hey implicate virtually every aspect of a police department's operations . . . [and risk] constitutionalizing particular . . . requirements . . . . Our decision does not apply to situations where the entity has refused to indemnify, nor does it extend to *express* departmental policies that are unconstitutional.

*Choate v. County of Orange*, 103 Cal. Rptr. 2d 339, 351-53 (Cal. Ct. App. 2000) (emphasis in original) (internal quotations omitted).

[6] Even if a plaintiff has the right to pursue additional nominal damages, a court (following *Amato)* would have the discretion to control expenses by imposing those discovery costs on the

Next, Plaintiff cites *Medina v. City of Chicago,* 100 F. Supp. 2d 893 (N.D. Ill. 2000), in which the City moved to sever an excessive force claim against two officers from the *Monell* claim and to stay discovery on that claim. Judge Kennelly noted the rulings in this District which had granted such motions and cited *Amato* as well as *Treece v. Hochstetler,* 213 F.3d 360 (7th Cir. 2000), which upheld the discretionary power of the trial judge to sever the *Monell* count in a case where the City stipulated to entry of judgment against itself should the officer be found liable. He rightly observed that these precedents do not *require* severance but noted the advantages of the practice since "[i]n many if not most cases, disposition of the individual claims will either legally or practically end the litigation," because loss of the individual claim ordinarily ends the case, and winning the claim means the plaintiff may not need, or want, to proceed further. *Medina*, 100 F. Supp. 2d at 895. He also noted the many ways in which bifurcation shortens the time to disposition and the expense of litigation. *Id*.

Judge Kennelly declined to bifurcate. He did so for two reasons grounded in the interest of the plaintiff. First, the City had not conceded it would pay any judgment against the individual officers. There remained the non-economic benefit of deterrence of future misconduct.[7] Second, he also declined to bifurcate based on case management principles. The individual officers had

---

plaintiff, or declining any petition for attorneys' fees. *See Farrar v. Hobby*, 506 U.S. 103, 115 (1992) ("When a plaintiff recovers only nominal damages . . . the only reasonable fee is usually no fee at all.").

The municipality itself could also reduce the effects by defaulting and paying the nominal damages. *See Amato*, 170 F.3d at 321, n.11. It could do so "without fear that [it] might suffer collateral consequences . . . [because] a default judgment lacks preclusive effect in other litigation." *Id*. at 323.

[7]Unlike the Second and Ninth Circuits, Judge Kennelly did not rely on a vindication rationale.

not shown why a joint trial would prejudice them.⁸ Nor did the City show why the *Monell* issue would make the trial much longer.

This case stands on a different footing. In *Medina*, the City did not stipulate that it would pay any compensatory damages awarded against the officers. Also, I think qualified immunity is a much more remote possibility, given the allegations in this complaint.

The most striking thing about Plaintiff's citation of *Medina* is the end of the actual opinion.

> That leaves the issue of discovery. Even if the Court is not willing to bifurcate the trial at this point, that does not mean that discovery must proceed all at once. . . . In this case, the Court will defer discovery on the *Monell* claim until after the completion of fact discovery on the claims against the individual officers. At that time, . . . the court will be able to reassess the case, including . . . the scope of discovery that the *Monell* claim would entail.

*Id*. at 898. In short, Plaintiff has not cited authority critical of the idea that discovery of *Monell* claims should come after discovery for other claims. Most of the cases Plaintiff cites severed the *Monell* count. The two judges who did not sever simply reserved the decision for later.

---

⁸He did recognize, however, that even if the proof against the individual officers is weak, *Monell* proof inherently proffers bad acts by officers that are not on trial which may persuade a jury the officers on trial must also be bad.

Plaintiff here has not asked for any type of injunction because he does not want one.⁹ He sets forth what he wants in his brief.

> Plaintiff is entitled to tell his story to a jury. [His] story is not just one of individual police officers who crossed the line but that of a City who is well aware of the unconstitutional behavior of its officers and condones their behavior by covering up . . . or ignoring it. . . . [He wants a] right to a jury trial to air his dispute . . . .

He wants a verdict or an opinion stating that the City either engages in an unconstitutional practice or has an unconstitutional policy. This is much like the relief sought in *Alliance to End Repression v. City of Chicago*, 820 F.2d 873 (7th Cir. 1987) (holding that a battle over the conclusions in an inherently non-binding judicial opinion is not a thing over which there can be a justiciable controversy). In simple terms, if you just want a trial court to say that the City was wrong, you have not presented a case or controversy to that court. If you want some kind of relief then you might get the opportunity for a trial court to say what you want, but you cannot sue for the court's opinion since, "[t]he expression of judicial views is a *by-product* of the need to decide the case." *Id*. at 876 (emphasis in original).

The policy claims in this case are legitimate matters of public concern, over which there is already public debate. I do not think Plaintiff argues that *Monell* discovery is necessary in bringing claims of police abuse to the public consciousness. When an Alderman, the Chairman

---

⁹Everything so far is based on the fact that Plaintiff in this case has only asked for monetary damages. Some plaintiffs may also seek broad injunctive relief against specific practices. In terms of severance of injunction issues and discovery, the practical considerations support separation of the two even more strongly, because the injunctive issue will not only require the extra *Monell* discovery, but also that the judge consider issues not germane to a trial for money damages. Even if the first trial resulted in a clear definition of the unconstitutional policy, custom or practice, there will still be questions about the scope, nature and efficacy of an injunction.

of the Committee on Police and Fire of the Chicago City Council, states there is "an environment where police officers . . . have ample reason to believe that they will not be held accountable even in instances of egregious misconduct," as Plaintiff quotes, it is difficult to believe that City policies, customs and practices are not already under scrutiny.

Given a choice between having a court hear a single case or having a legislature conduct a hearing (free from ordinary evidentiary constraints) in order to decide whether and how to change policy, practice or custom, the choice ought to be made in favor of leaving it to the legislature. It is the job of the City Council to deal with citywide policies and practices. The court sits to remedy any particular act by a city employee which violates the Constitution, and it will do so regardless of what the City Council may choose to do. Here that remedy would be a damage award which is being paid by the City. That award is a good reason for it to change policies that are unconstitutional.

In the absence of claims for equitable relief, and in addition to damages, Plaintiff wants a piece of paper saying that the City acts unconstitutionally. I do not know exactly why he wants that paper, but securing a verdict or opinion for the sole purpose of having those words does not create a case or controversy within the meaning of Article III of the Constitution.

All of this is why I will postpone, and perhaps preclude, the extensive *Monell* discovery requested in this case. That discovery may inflict needless, wasteful expense of time and money upon the parties and the court. I would also be inclined to sever the trial of any individuals from a trial of the City. If Plaintiff loses against the officers, the case is over. If Plaintiff prevails, then he can decide whether it is worth pursuing his claim against the City. If he is entitled to try for

additional nominal damages, then he clearly has a right to pursue them. The mandate of "case or controversy" only requires that something concrete be at stake – a dollar will do.

Defendant's motion to postpone *Monell* discovery[10] and conditionally sever the trial of the City from the trial of the officers is granted.[11]

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: March 22, 2007

---

[10]This does not preclude Plaintiff from seeking evidence with respect to prior conduct of the officers or inquiring about their understanding of policy, practice or custom, since these things are relevant to the individual claims.

[11]"Conditionally" because if the wrong is defined as holding someone hostage to secure a weapon or property, there might be so few instances of this that severance would not be the most economical way to approach the case. However, that paucity of instances would also endanger Plaintiff's policy, practice or custom claim.